**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

Civil action No. 2:15-cv-01431-SRC-CLW

|  |  |
|---|---|
| MICHAEL OMAN WASHINGTON, | : |
| | : |
| Plaintiff, | : |
| | : |
| -vs- | : |
| | : |
| THE PLAINTFIELD BOARD OF | : |
| EDUCATION, ANNA BELIN- | : |
| PYLES, SCOTT BUCKHOLDER, | : |
| JEAN MARIE GORDON | : |
| | : |
| Defendants. | : |
| | : |
| | : |

**BRIEF IN OPPOSITION OF DEFENDANTS' MOTION
TO DISMISS THE COMPLAINT IN LIEU OF AN ANSWER**

THE HILL FIRM, LLC
BILAL HILL, ESQ.
ATTORNEY ID. NO. 030302012
415 AMWELL ROAD, SUITE 207
HILLSBOROUGH, NJ 08844
OFFICE PHONE: 908-333-6800
FAX: 855-638-5583
EMAIL: BilalHill@LawNJNY.com
Attorney for Plaintiff,
Michael Oman Washington

## STATEMENT OF THE CASE

Plaintiff, Michael Oman Washington has been subjected to discrimination due to his race and retaliation for the past two years.  This activity on the part of defendants has been ongoing and continues at the present time.  Plaintiff filed a complaint on February 26, 2015.  Defendants have yet to file an Answer, and in lieu of an Answer have filed the within motion to dismiss.

## STATEMENT OF FACTS

1.   MICHAEL OMAN WASHINGTON, resides in Plainfield, New Jersey.  Mr. Washington is an African American male.  He has been employed with the Plainfield Board of Education since 1994 in various roles.  Plaintiff first began working for the Plainfield Board of Education in September 1994.

2.   Plainfield Board of Education is a local educational service agency.  It has its principal office at 1200 Myrtle Avenue, Plainfield, New Jersey 07060.

3.   Anna Belin-Pyles is a natural person who is the Superintendent for the Plainfield Board of Education.  Anna Belin-Pyles is a "person" within the meaning of the FLSA and CEPA, and is sued individually in her capacity as Superintendent of the Board of Education.  Anna Belin-Pyles exercises sufficient control over the Plainfield Board of Education operations to be considered plaintiff's employer under the FLSA and CEPA and at all times material herein were involved in the decision making for the actions complained of below.

4.   Scott Burkholder is a natural person who is the Principal for Jefferson Elementary School.

Scott Burkholder is a "person" within the meaning of the FLSA and CEPA, and is sued individually in his capacity as Principal for Jefferson Elementary School and agent for the Plainfield Board of Education.  Scott Buckholder exercises sufficient control over Jefferson Elementary School operations to be considered plaintiff's employer under the FLSA and CEPA and at all times material herein were involved in the decision making for the actions complained of below.

5.  Dr. Jean Marie Gordon is a natural person who is the Supervisor of Science and Technology for the Plainfield Board of Education.  Dr. Jean Marie Gordon is a "person" within the meaning of the FLSA and CEPA, and is sued individually and in her capacity as Supervisor of Science and Technology of the Plainfield Board of Education.  Dr. Gordon exercises sufficient control over the Plainfield Board of Education operations to be considered

plaintiff's employer under the FLSA and CEPA and at all times material herein were involved in the decision making for the actions complained of below.

6.   In June 2013 Plaintiff became Plainfield Educational Association Grievance Chair. Plainfield Education Association is the teacher's union for Plainfield public school teachers.

7.   In the Fall of 2013 Mr. Washington had an oral dispute with a fellow teacher, who alleged that he referred to her as "a silly little white girl".

8.   In Defendants' efforts to investigate the dispute there was an egregious disparity in the way Mr. Washington, an African American male, was treated as compared to the way in which the white female teacher was treated. Mr. Washington has been subjected to a campaign of disparate and negative

treatment from Defendants, including being stripped of his job responsibilities and being placed in a "rubber room" indefinitely.

9. Plaintiff also filed several Unfair Labor Practices (ULPs) complaints against Defendants based on conduct Plaintiff felt was illegal and inappropriate, and after the investigation of the argument with the teacher was concluded, Defendants retaliated against Mr. Washington by making dropping the ULPs a condition of being released from the "rubber room".

10. In June 2014 and September 2014 whenever Plaintiff engaged in conduct in his role as Grievance Chair, Defendant's would exacerbate their retaliation.

## LEGAL ARGUMENT

The Court must conduct a two-part analysis when presented with a motion to dismiss, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.2009). "First

the factual and legal elements of the claim should be separated."  *Id.*  "The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  *Id.* at 210-11.  "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."

To successfully prove a claim under CEPA, plaintiff must demonstrate:

(1) that he reasonably believed that his employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law;

(2) that he performed whistle-blowing activity described in N.J.S.A. 34:19-3a, c(1) or c(2);

(3) an adverse employment action was taken against him and

(4) a causal connection exists between the whistle-blowing activity and the adverse employment action.  *Mosley v. Femina Fashions, Inc.* 356

N.J.Super. 118, 127 (App.Div.2002), certif. denied, 176 N.J. 279 (2003).

Mr. Washington was subjected to a campaign of retaliation which Defendants made it abundantly clear would only end if and when Mr. Washington dropped his ULP claims.  CEPA prohibits such conduct stating in pertinent part: An employer shall not take any retaliatory action against an employee because the employee does any of the following:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any

shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care; or (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity;

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer, or another employer, with whom there is a business relationship, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, re- tiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a li- censed or certified health care professional, provides information to, or testifies before, any public body con- ducting an investigation, hearing or inquiry into the quality of patient care; or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, em- ployee, former employee, retiree or pensioner of the employer or any governmental entity, or, if the em- ployee is a licensed or certified health care professional, constitutes improper quality of patient care;

(2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client,

patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3.]  Mr. Washington was relegated to a "rubber room" for nine months while an investigation was conducted regarding an oral argument with a fellow teacher.  This treatment Plaintiff alleges was discriminatory as further elucidated below.  The retaliation occurred when the investigation was over and it was time for Mr. Washington to return to normal classroom teaching, he was told that if he didn't drop two un-related ULP claims he would have to remain in the "rubber room".  The retaliation that Mr. Washington has

been subjected to, continues to the present.  For more than a year now Mr. Washington has been stripped of his job responsibilities, placed in a "rubber room", placed on "inactive status", transferred to different schools with no clear direction as to the nature of his job assignment, and treated in the most unprofessional manner. This is the definition of retaliation.

Defendant's further argue, in their brief, that the CEPA claim is time barred because Plaintiff complains of conduct that first occurred in the Fall of 2013.  Defendants' are attempting to distort the timeline with this argument.  Mr. Washington's argument with the teacher occurred in October 2013.  The resulting investigation, Mr. Washington alleges was conducted in a discriminatory manor in violation of New Jersey's Law Against Discrimination.  The CEPA claims arose in the Spring of 2014 after Mr. Washington had spent nine months in a "rubber room" having been

stripped of his responsibilities and in the negotiations to be allowed out of the "rubber room" and back into the classroom, Defendants' made dropping his ULP claim a condition of being removed from the "rubber room".  The statute of limitations for the CEPA claim commenced at that point.

Contrary to Defendants' brief, Plaintiff has not brought a Title VII claim, Plaintiff's discrimination claim is brought under New Jersey's Law Against Discrimination (LAD), N.J.S.A. 10:5-1 et seq. which does not require a filing with the EEOC nor a right to sue letter.  Plaintiff's LAD claim is based on the aforementioned disparity in treatment resulting from Plaintiff's argument with his fellow teacher.

> A disparate treatment violation is made out when an employee from "a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion...." *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir.1990). Generally, in Title VII and NJLAD cases, a prima facie case of employment discrimination is established when the plaintiff demonstrates: (1) that he or she is

a member of a protected class; (2) that he or she was qualified for the job; (3) that he or she was negatively affected by the defendant's employment decisions; and (4) that he or she was treated less favorably than employees not within the protected class. See generally, *Hicks*, 509 U.S. at 506 113 S.Ct. 2742; see also 1 Barbara Lindemann & Paul Grossman, Employment Discrimination Law at 15 (3d ed.1996) (citing *McDonnell Douglas Corp.,* 411 U.S. at 802 n. 13, 93 S.Ct. 1817, and Burdine, 450 U.S. at 253-54 n. 6, 101 S.Ct. 1089)

*Murphy v. Housing Authority And Urban Development Agency of the City of Atlantic City*, 32 F.Supp.2d 753, 763 (D.N.J.1999).  Mr. Washington is a member of a protected class who was treated significantly different as a result of the Defendants' investigation of the argument with Mr. Washington and the other teacher who was white.  The disparate treatment amounted to a campaign of harassment that has continued for over a year.  The fellow teacher was not subjected to treatment that would be considered similar and/or analogous.  This disparity in treatment was administered prior and during the investigation of the oral dispute. Such that the disparity could not have been attributed to the results of the investigation and/or any

findings of fault as neither could have been ascertained at that juncture.

## CONCLUSION

Based on the foregoing, Plaintiff, request that Defendants' Motion to Dismiss be denied.

Respectfully Submitted

The Hill Firm, LLC

Attorney for Plaintiff



Bilal Hill, Esq.

Dated: November 8, 2015